

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer P. Rainey, President
The University of Texas
Austin, Texas

Dear Sir:

Opinion No. O-3869
Re: Interpretation of Senate
Bill No. 486 of the 47th
Legislature in the par-
ticulars discussed.

We are pleased to comply with your letter of August 6, 1941, which submits the following questions for our opinion appertaining to Senate Bill No. 486 of the 47th Legislature:

"1. Does S. B. No. 486 mean that we must determine whether the parents of the children concerned are on active duty in Texas on the days set for official registration in September so far as determining the fees to be charged these children in the event their parents are not legal residents of Texas?

"2. Parents are writing the University at all times during the summer concerning the fees which will be required of their children. It may be that non-Texas members of the army, navy, or marine corps are stationed in Texas at the time inquiry is made, but that such individuals may be transferred out of Texas before registration days in September. Would such change of station take the individual concerned out of the group entitled to the fee concession made in S. B. No. 486?

"3. Are we required under the terms of S. B. No. 486 to re-determine whether the parents of the children concerned are stationed in Texas

Honorable Homer P. Rainey, Page 2

at the opening of our second semester, or may
we allow the children concerned to be governed
by the status of their parents at the time of
the opening of the first semester, if the children
concerned were in the University during the first
semester? In other words, may we determine the
fees to be charged as of the beginning of the ses-
sion for the entire session, or must the fees be
determined separately for each semester?

"4. If the parents of the children concerned
are stationed on active duty at the opening of the
first semester, but are transferred to inactive
duty or to the retired list prior to the opening
of the second semester, does that require us to
re-determine the fees to be charged for the second
semester?"

By a supplemental letter from Mr. Max Fichtenbaum, As-
sistant Registrar of the University of Texas, under date of August
11, 1941, we are apprised of the following facts:

"In accordance with our telephone conversation
of this afternoon I am glad to write you about our
procedure so far as registration for the first semes-
ter and second semester is concerned. Students who
register in the first semester generally sign up for
their courses for both the first semester and the
second semester. When the student pays his fees at
the opening of the first semester, he pays his reg-
istration fee of $25.00 (if he is a resident of Tex-
as) for the first semester and, at the same time,
pays his laboratory fees, physical training fee, if
any, property deposit, student activity fee, and
hospital fee for the entire session.

"When the first semester student signs up at
the opening of the second semester for the second
semester, he fills out another registration, or
address, card, takes this card to the Bursar's Of-
fice, and pays his second semester registration fee
of $25.00. The student has a week's time after the
opening of the second semester in which to add or
drop any courses which he may wish to change. This
adding and dropping of courses is separate and a-
part from the payment of his registration fee.

Honorable Homer P. Rainey, Page 3

"The University regards the payment of the registration fee as an essential part of the registration process. I quote the following from page 20 of our current General Information Bulletin:

"'Paying fees a part of registration.--A student is not registered, is not in the University, is not entitled to University privileges, until he has paid his fees.'

"Our practice with respect to change of residence for fee purposes so far as the non resident fee law is concerned has been to regard the two semesters as separate units of time for fee payment. We have not had the feeling that a person's residence status continued for the full long session on the basis of what it was at the opening of the long session. We have quite a number of cases of nonresident students who establish a residence in Texas after the opening of the first semester and whose twelve-month period of residence would entitle them to be classified as resident students for fee purposes at the opening of the second semester of their second year. Where such cases occur, we permit the student to have the benefit of Texas fees for the second semester, even though he was classified as a nonresident student for the first semester.

"The converse of this is also true. It sometimes happens that the families of our Texas students may move out of the State during the first semester with the intention of giving up their residence in Texas. Where this comes to our attention, we classify the student as a nonresident for the second semester."

Students of the University, it is obvious, register for each semester. Registration in September, albeit at the beginning of the "long session," is for the first semester; it does not suffice as registration for the second semester.

Section 1 of Senate Bill No. 486, enacted by the 47th Legislature, reads as follows:

285

"Section 1. Section 1, Chapter 196, General Laws, Acts of the 43rd Legislature, Regular Session, is hereby amended by adding a subsection to follow subsection (5) and to be known as subsection (6), to read as follows:

"'(6) Officers, enlisted men, selectees or draftees of the Army, Army Reserve, National Guard, Navy, Naval Reserve, or the Marine Corps of the United States, who are stationed in Texas by assignment to duty within the borders of this State, shall be permitted to enroll their children in State institutions of higher learning by paying the tuition fee and other fees or charges provided for regular residents of the State of Texas, without regard to the length of time such officers, enlisted men, selectees or draftees have been stationed on active duty within the State.'"

The manifest effect of this Act is to afford the children of members of the army, navy, or marine corps of the United States, stationed in Texas on active duty, the same status as resident students under House Bill No. 322 of the 43rd Legislature (Chapter 196, Acts of the Regular Session of the 43rd Legislature; Article 2654c, Vernon's Annotated Civil Statutes).

Section 1 of House Bill No. 322 of the 43rd Legislature provides, in part, as follows:

"Section 1. The governing boards of the several institutions of collegiate rank supported in whole or in part by public funds appropriated from the State Treasury shall cause to be collected from students registering in the said schools after September 1, 1933, tuition at the following rates:

"1. From each resident student, who registers for twelve (12) or more semester hours of work per semester of four and one-half (4½) months, Twenty-five Dollars ($25.00) per semester; or, who registers for twelve (12) or more term hours of work per term of three (3) months, Sixteen Dollars and Sixty-seven Cents ($16.67) per term."

It is apparent that the status of the students at the time of registration for each semester is controlling. If they

Honorable Homer P. Rainey, Page 5

are resident students at such time, certain prescribed fees are to be paid; if non-resident students, certain other prescribed fees are to be paid; if the children of members of the army, navy, or marine corps of the United States, stationed on active duty within Texas, only the fees prescribed for resident students are to be paid. This is the effect of Senate Bill No. 486 of the 47th Legislature regarding those falling within the third classification.

The practice you have followed with reference to the ascertainment of the status of students for each semester should likewise be followed with reference to students coming within the provisions of Senate Bill No. 486. The status of the parents of students within the provisions of Senate Bill No. 486 at the time of registration in September for the first semester will not control for the second semester. Therefore, you are required to re-determine the fees to be charged such students for the second semester.

We have assumed that the children about which you are concerned are less than twenty-one years of age.

Adverting to your questions in numerical order, you are accordingly advised as follows:

Your first question is answered in the affirmative, namely, that you must determine the status of the parents of the children on the days set for official registration in September. Presumably, students claiming a status entitling them to pay the lower resident fees will provide the necessary proof for you in each case;

Your second question is answered in the affirmative, namely, that a change in status from the time inquiry is made of the University until the time actual registration is had will require you to collect fees determined by the status of the student at the time of registration;

Your third question is answered in the negative, namely, that you may not determine the fees to be charged for the second semester as of the time of the opening of the first semester or entire session;

Your fourth question is answered in the affirmative, namely, that if the status of the parents of the children change from active duty at the time of the first semester to inactive duty, or otherwise, prior to the opening of the second semester,

Honorable Homer P. Rainey, Page 6

you are required to re-determine the fees to be charged for the second semester upon the basis of the status of the parents at that time.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Zollie C. Steakley
Assistant

ZCS:RS

APPROVED AUG 18, 1941

Acting ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY ___
CHAIRMAN